IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ANDREW ALEXANDER**     **PLAINTIFF**

**V.**     **NO. 4:21-CV-147-DMB-JMV**

**LAKEISHA HUBBERT**
**nka Nekeischella Hubbert, et al.**     **DEFENDANTS**

## OPINION AND ORDER

Claiming that he was raped by a correctional officer while an inmate at Parchman, Andrew Alexander sued Tavoris Emerson and Lakeisha Hubbert asserting § 1983 claims for violations of his constitutional rights and a state law claim for intentional infliction of emotional distress. Emerson moves to dismiss Alexander's First and Fourteenth Amendment claims, as well as his state law claim, for lack of jurisdiction and failure to state a claim. Because (1) there are no official capacity claims at issue; (2) Alexander failed to sufficiently allege a liberty interest as required for his Fourteenth Amendment due process claim; (3) Alexander failed to allege sufficient non-conclusory facts regarding his First Amendment claim; and (4) Alexander just barely pled sufficient facts for his state law claim, Emerson's motion to dismiss will be granted in part but Alexander will be allowed to seek leave to amend.

## I
## Procedural History

On November 4, 2021, Andrew Alexander filed a complaint in the United States District Court for the Northern District of Mississippi against Lakeisha Hubbert, "First Name Unknown Emerson," and "John Does 1-5," in their individual capacities. Doc. #1. Against Hubbert, the complaint alleged a 42 U.S.C. § 1983 claim for violations of Alexander's Eighth Amendment rights arising from Hubbert's alleged rape of Alexander while he was an inmate at the Mississippi

State Penitentiary at Parchman. *Id.* at 9. As to Emerson, the complaint alleged § 1983 claims for violations of Alexander's Fourteenth and First Amendment rights based on Emerson allegedly placing Alexander in segregation. *Id.* at 9–11. The complaint also included an intentional infliction of emotional distress claim against both defendants. *Id.* at 11–12.

On February 18, 2022, Alexander filed an amended complaint listing Hubbert as "nka Nekeischella Hubbert," Emerson as "nka Tavoris Emerson," and "John Does 1-5, in their individual capacities." Doc. #16. The amended complaint contains the same allegations and claims as Alexander's original complaint. *Compare* Doc. #1 *with* Doc. #16.

Emerson filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on March 4, 2022. Doc. #20. The motion is fully briefed. Docs. #21, #29,[1] #30.

## II
## Standards

Motions under Rule 12(b)(1) challenge a court's subject matter jurisdiction. Where, as here, "the movant mounts a facial attack on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6),

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (cleaned up). "While the court must

---

[1] Alexander erroneously docketed his memorandum brief as a response and, in violation of the Local Rules, failed to file a document constituting his separate response. *See* L.U. Civ. R. 7(b)(4) ("Counsel for respondent must … file a *response and memorandum brief* in support of the response.") (emphasis added). However, since his responsive brief did not involve the submission of evidence, these procedural deficiencies are excused in this instance.

accept the facts in the complaint as true, it will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal quotation marks omitted).

## III
## Factual Allegations

Alexander "is an inmate in the custody of the Mississippi Department of Corrections [("MDOC")] housed at Parchman." Doc. #16 at 2. Hubbert "was a corrections officer at Parchman during August, September, October, November, and December of 2019." *Id.* Emerson "is an employee of the MDOC who worked in the Corrections Investigation Divisions." *Id.*

"Beginning in August of 2019, … Hubbert used her position and authority to coerce … Alexander into engaging in a sexual relationship with her." *Id.* at 3. "From August 2019 through December 3, 2019, … Hubbert had sexual intercourse with … Alexander two to three times per week." *Id.* "These encounters happened in unoccupied rooms and storage closets." *Id.* The conditions at Parchman—including the failure of MDOC staff to provide inmates with Administrative Remedy Program complaint ("ARP") forms, the ignoring of ARPs that were filed, retaliation against prisoners who filed ARPs, and guards' power over inmates—"created a situation where 'no' was not an acceptable answer for the sexual relationship between" Hubbert and Alexander. *Id.* at 3–4.

In December 2019, "Hubbert's superiors found explicit messages to … Alexander on her phone." *Id.* at 5. "This led to … Hubbert being fired or transferred." *Id.*

Also in December 2019, "Emerson placed … Alexander … in segregation for seven months, allegedly pending the investigation of the incident." *Id.* (emphasis omitted). "Emerson tried – and failed – to place … Alexander on the Security Threat Group (STG) list" but Alexander "was never questioned or interviewed about the incident." *Id.* (emphasis omitted). Alexander

3

"was never issued a Rule Violation Report" and "was never permitted to attend or otherwise participate in a housing confirmation hearing or any review hearing" in violation of MDOC Standard Operating Procedures. *Id.* But "[e]very twelve days while [he] was held in segregation, [Alexander] was issued a detention notice indicating that he was to continue being confined in segregation 'pending STG fraternizing.'" *Id.*

"After seven months in segregation, numerous renewed detention notices, and no interviews[,] … Alexander was simply released back into the general population." *Id.*

## IV
## Analysis

With respect to his constitutional claims against Emerson, Alexander alleges that Emerson violated his Fourteenth Amendment due process rights because he "was not given any process … when he was placed in segregation for seven months" and "[t]here was no legitimate penological purpose for … Emerson … to keep [him] in segregation for seven months or attempt to place him on the Security Threat Group list." Doc. #16 at 9, 10. Alexander alleges that Emerson violated his First Amendment rights because "[t]he only reasonable conclusion is that … Alexander was placed in segregation to prevent the exercise of his First Amendment right to file an ARP and seek a remedy for being subjected to a non-consensual sexual relationship." *Id.* at 11. As to his state law intentional infliction of emotional distress claim, Alexander alleges that his placement in segregation "without any legitimate basis is extreme and outrageous conduct" which caused him severe emotional distress. *Id.*

Emerson argues that Alexander's "claims for monetary relief against [him] in his official capacity are due to be dismissed pursuant to Rule 12(b)(1), as [Alexander] has failed to make sufficient allegations to overcome Eleventh Amendment immunity" and Alexander's "federal claim is also improper as to [him] in his official capacity because he is not a party that can be sued

4

under 42 U.S.C. § 1983." Doc. #20 at 1–2. As to claims against him in his individual capacity, Emerson argues Alexander "failed to adequately plead facts to establish a constitutional violation under 42 U.S.C. § 1983" and "cannot overcome [his] defense of qualified immunity." *Id.* at 2. Finally, Emerson argues the "state law claim of intentional infliction of emotional distress is barred by the Mississippi Torts [sic] Claims Act (MTCA) and is therefore due to be dismissed." *Id.*

### A. Jurisdiction

Emerson argues that claims against him in his official capacity "are due to be dismissed for lack of subject matter jurisdiction, as [he] is immune from suit" under the Eleventh Amendment. Doc. #21 at 6. Alexander responds that he did not bring any official capacity claims against Emerson such that the Eleventh Amendment has "no bearing on his liability for monetary damages in his individual capacity."[2] Doc. #29 at 2. Because the Eleventh Amendment bars "claims for damages against state officers in their *official* capacity,"[3] and such claims are not at issue here, dismissal of the non-existent official capacity claims based on lack of jurisdiction is properly denied.

### B. Constitutional Violation

On the merits, Emerson argues dismissal is warranted because Alexander failed to allege a violation of either his Fourteenth or First Amendment rights. Doc. #21 at 10–14.

#### 1. Fourteenth Amendment

Emerson argues that Alexander's "placement in administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest[ and] a prisoner's discipline in segregated confinement does not present the type of atypical, significant deprivation

---

[2] After the listing of the defendants' names in the caption, including "John Does 1-5," the amended complaint specifies "in their individual capacities." Doc. #16 at 1.

[3] *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 507 (5th Cir. 2021) (emphasis added).

5

in which a state might conceivably create a liberty interest." Doc. #21 at 9 (cleaned up). Additionally, Emerson argues that "[e]ven if [Alexander's] confinement in segregation did implicate a liberty interest, he has not alleged that he was not afforded the process he was due under the Constitution" because he conceded that "he was issued a detention notice every twelve days … and that his custodial status was regularly reviewed." *Id.* at 11. Emerson further argues that "failure to follow institutional rules does not present a constitutional claim." *Id.* at 12.

Alexander responds that he was not "placed in segregation as a result that *he* engaged in any improper conduct[ but r]ather, … he was placed in administrative segregation as a result of his status as a victim of sexual assault" and this reason for his placement in segregation "makes his confinement there, without any process, a due process violation" because it resulted in "an atypical and significant hardship." Doc. #29 at 3–4. Alexander argues he did not receive any process because "[t]he issuance of the detention notices to [him] represent[] nothing more than compliance with an administrative formality, and does not indicate that any review or investigation was ever conducted," and he "was never permitted to make any statement, he was never questioned, and no review was ever conducted." *Id.* at 6–7.

Emerson replies that even if Alexander has alleged a constitutional violation, "[b]y his own admission, [Alexander] fails to satisfy the second prong of the qualified-immunity analysis" because he "admits that he has not found any case directly addressing whether placing a victim of sexual assault in segregation for seven months without any hearing, investigation, or opportunity to challenge the confinement violates the Due Process Clause." Doc. #30 at 3–5 (cleaned up) (quoting Doc. #29 at 5-6). Emerson argues that Alexander cannot "identify a single case in which an officer's conduct under similar circumstances was found to be unreasonable—much less *outrageous*." *Id.* at 6.

6

Under the Fourteenth Amendment, states may not "deprive any person of life, liberty, or property, without due process of law." Courts must "address two inquires" to determine what process is due: "(1) whether there exists a liberty interest which has been interfered with by the State and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient." *Hope v. Harris*, 861 F. App'x 571, 580 (5th Cir. 2021) (alteration omitted) (quoting *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228–29 (5th Cir. 2020)).

> A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, or it may arise from an expectation or interest created by state laws or policies. With regard to the latter, [courts] focus on the nature of the deprivation resulting from a state regulation, rather than the language of a particular regulation. In *Sandin [v. Conner*, 515 U.S. 472 (1995)], the Supreme Court held that, in addition to the obvious due process interests implicated by restrictions that lengthen a sentence, prisoners' liberty interests will be generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Wilkerson v. Goodwin*, 774 F.3d 845, 852 (5th Cir. 2014) (cleaned up). Courts consider "the severity of the restrictive conditions and their duration as key factors in analyzing whether those conditions constitute an atypical and significant hardship on the inmate." *Id.* at 854 (internal quotation marks omitted).

Here, Alexander has failed to allege sufficient facts to show he had a liberty interest in not being placed in segregation. The amended complaint fails to provide *any* facts with respect to "the severity of the restrictive conditions" Alexander alleges he faced in segregation as opposed to general population such that the Court cannot consider whether these conditions imposed an atypical and significant hardship. Further, the length of his segregation—seven months—is lower than in cases where courts have declined to find a liberty interest. *See id.* at 855 ("By contrast, the duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years ….") (collecting cases). Finally, to the extent Alexander

argues that being placed in segregation because he was a victim of sexual assault resulted in an atypical and significant hardship, the Fifth Circuit has "repeatedly affirmed that prison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order." *Id.* at 852 (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)); *see Hernandez*, 522 F.3d at 563 (prisoner who was kept in "lockdown status" for thirteen months based on safety concerns and incorrect identification as a gang member failed to show a liberty interest because "non-disciplinary lockdown is by no means an atypical prison experience"). Alexander's failure to sufficiently allege a liberty interest amounts to a failure to allege a constitutional violation of his due process rights.

### 2. First Amendment

Emerson argues Alexander "has failed to allege sufficient facts to show a deprivation of his constitutional right to free speech" because "he gives no factual explanation as to how he was prevented from filing a prison grievance." Doc. #21 at 14. Further, Emerson argues that "an inmate's placement in disciplinary segregation pending the investigation of a rule violation is not a retaliatory act on the part of the prison officials" and even if it was, Alexander fails to claim "he invoked a constitutional right by engaging in a protected activity." *Id.* at 15.

Alexander responds that he "did not explicitly claim First Amendment retaliation." Doc. #29 at 7. He argues that "while no explicit policy was designed to prevent [him] from exercising his protected First Amendment right to seek redress for the sexual assault he experienced, … Emerson's conduct was designed to achieve the same result." *Id.* at 9. Emerson replies that Alexander fails to allege "any specific facts demonstrating that [his] conduct chilled [Alexander's] speech, or in any way prevented [Alexander] from filing administrative grievances, complaining of a guard's misconduct, or accessing the courts." Doc. #30 at 8.

8

"Filing grievances in accordance with prison procedure and complaining about treatment can be protected expression under the First Amendment." *Haralson v. Campuzano*, 356 F. App'x 692, 698 (5th Cir. 2009) (citing *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989)). Here, the amended complaint contains vague and conclusory allegations that "[t]here was a longstanding policy of corrections officers and their supervisors refusing to provide the necessary forms to file [ARPs]" and "[i]nmates, including [Alexander], routinely suffered retaliation for filing, or attempting to file, ARPs." Doc. #16 at 4. However, it fails to allege any facts to support Alexander's conclusory allegation that "[t]he only reasonable conclusion is that [he] was placed in segregation to prevent the exercise of his First Amendment right to file an ARP and seek a remedy for being subjected to a non-consensual sexual relationship."[4] *Id.* at 11. Nor does the amended complaint allege any facts indicating that Emerson otherwise prevented Alexander from filing an ARP. In the absence of such factual allegations, the amended complaint fails to adequately allege a First Amendment violation. *See Widner v. Aguilar*, 398 F. App'x 976, 980 (5th Cir. 2010) (affirming dismissal of inmate's First Amendment claim based on access to the court where he had "not alleged any facts showing he was unable to have his mail sent to the district court or that his legal position was damaged by any interference with his outgoing mail").[5]

### 3. Nature of dismissal

"While a court can dismiss a deficient pleading, it should provide *at least* one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the plaintiff[] advise[s] the court that [he is] unwilling or unable to amend in a manner that will avoid dismissal." *Dierlam*

---

[4] More precisely, he fails to provide any factual allegations as to why placement in segregation prevented him from filing an ARP or otherwise complaining of Hubbert's conduct.

[5] Having found that Alexander failed to allege a constitutional violation such that dismissal is proper, the Court declines to address whether Emerson is entitled to qualified immunity. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017).

9

*v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (cleaned up) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Here, because it is not "clear that the defects are incurable" and Alexander has not "advise[d] the court that [he is] unwilling or unable to amend in a manner that will avoid dismissal,"⁶ the dismissal of these claims will be without prejudice and Alexander will be allowed a period of time to seek leave to amend.

### C.  State Law Claim

Emerson argues the intentional infliction of emotional distress claim against him should be dismissed because Alexander "has failed to allege any retaliatory conduct [by him] that would theoretically cause [Alexander] emotional distress;" "[e]ven if [Alexander] had, this Court could decline to exercise supplemental jurisdiction over [the] state law claim and dismiss it;" the claim is "barred by the sovereign immunity provisions" of the MTCA because Alexander "failed to allege any facts to suggest [he] was not acting … within the course and scope of his employment as the Chief of [the Criminal Investigations Division] at Parchman, when [Alexander] was placed in administrative segregation pending investigation;" Alexander, "as an inmate, is barred under the MTCA from bringing this claim;" and Alexander "has not alleged malice" on his part to remove the claim from the MTCA.  Doc. #21 at 2, 16–17.

Alexander responds that his claim is outside of the MTCA because while he "did not use the word 'malice' in his Complaint," he "explicitly claimed that he was kept in segregation for seven months *without justification*, and that … Emerson did it intentionally."  Doc. #29 at 11–12 (internal citations omitted).  Emerson replies that Alexander "fail[ed] to offer any evidence of malice" such that his statement that the segregation was "'either intended to cause [him] severe emotional distress or was reckless with respect to that probable outcome' is a conclusory allegation

---

⁶ *Great Plains Tr. Co.*, 313 F.3d at 329.

… insufficient to demonstrate malice." Doc. #30 at 9.

While the Court has found dismissal of the federal claims against Emerson proper such that no federal claim would remain against him,[7] Alexander will be allowed to seek leave to amend. As such, the Court will address the state law claim.[8]

The MTCA provides that "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim … [o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution." Miss. Code Ann. § 11-46-9 (1)(m). While there is "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment," "an employee shall not be considered as acting within the course and scope of his employment … if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." Miss. Code Ann. § 11-46-5 (2)–(3).

Though just barely reaching the level of sufficiency, the amended complaint alleges adequate facts to support malicious action by Emerson such that the intentional infliction of emotional distress claim falls outside of the MTCA. Specifically, the amended complaint alleges that Emerson placed Alexander in segregation "pending the investigation" surrounding Hubbert but no one questioned Alexander about the incident during the investigation such that it can be reasonably inferred no investigation occurred and after seven months, Alexander "was simply

---

[7] *See* 28 U.S.C. § 1367(c)(3) (allowing a court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

[8] The Court expresses no opinion as to whether the state law claim is "so related to [the federal claims against Hubbert] that they form part of the same case or controversy" to justify the exercise of supplemental jurisdiction if Alexander fails to obtain leave to amend. 28 U.S.C. § 1367(a).

11

released back into the general population." Doc. #16 at 5. At this stage, Alexander has sufficiently alleged malice for the intentional infliction of emotional distress claim to survive.

### D. Summary

Because the amended complaint does not contain official capacity claims against any defendant, Emerson's motion to dismiss will be denied to the extent it seeks dismissal for lack of subject matter jurisdiction. It is also will be denied with respect to the state law claim against Emerson. But because Alexander fails to adequately allege a liberty interest in his custodial status or sufficient facts to allege a First Amendment violation, the motion will be granted as to those claims but Alexander will be allowed a period of time to seek leave to amend.

## V
## Conclusion

Emerson's motion to dismiss [20] is **GRANTED in Part and DENIED in Part**. It is GRANTED to the extent it seeks dismissal of Alexander's First and Fourteenth Amendment claims against Emerson. It is DENIED in all other respects. Within fourteen (14) days of the entry of this order, Alexander may seek leave to amend his amended complaint.[9]

**SO ORDERED**, this 12th day of October, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[9] Should Alexander fail to seek leave to amend or if it is ultimately determined amendment would be futile, the claims will be dismissed with prejudice.

12